621 P.2d 37

ST. JOHNS IRRIGATION AND DITCH COMPANY, an Arizona Corporation; Lyman Water Company, an Arizona Corporation; Round Valley Water Users Association, an Arizona Corporation; The Springerville Water Rights and Ditch Company, an Arizona Corporation, Petitioners–Appellees,

v.

ARIZONA WATER COMMISSION, Respondent–Appellant.

No. 1 CA–CIV 4437.

Court of Appeals of Arizona, Division 1.

Sept. 23, 1980.

Rehearing Denied Nov. 13, 1980.

Review Denied Dec. 9, 1980.

Robert K. Corbin, Atty. Gen. by Thomas Prose, Asst. Atty. Gen., and Ralph E. Hunsaker, Phoenix, for respondent–appellant.

Platt & Hall, P. C. by Mitchel D. Platt, St. Johns, for petitioners–appellees.

## OPINION

FROEB, Presiding Judge.

The waters of the Upper Little Colorado River and its tributaries above the conflux of the Little Colorado River and the Carrizo drainage are the subject of this case. They are hereafter referred to for simplicity as the "waters" or "the waters of the Upper Little Colorado."

The trial court found that all of these waters have been appropriated to ownership and that only in rare instances has there ever been enough water available to service even existing rights.

In light of this, the trial court ordered special action relief in favor of petitioners which prohibits the Arizona Water Commission from acting upon or granting further water rights in the waters of the Upper Little Colorado River.

The legal dispute in the case centers on the authority of the trial court to prohibit a state agency from proceeding with functions assigned to it by statute.

Petitioners–appellees (referred to as "the water companies") are owners of vested water rights in the waters by reason of a 1918 decree of the Apache County Superior Court which has become known as the Norviel Decree. *See Ernst v. Superior Court of Apache County*, 82 Ariz. 17, 307 P.2d 911 (1957). Original respondents Arizona State Land Department and the Arizona State Land Commissioner were, when this action was begun, given statutory duties relating to the appropriation and distribution of waters of the state as set forth in A.R.S. § 45–101, *et seq.* By reason of Laws of 1979, Ch. 139, water rights administration was transferred from the State Land Department to the Arizona Water Commission, the present appellant by substitution (referred to as "the Water Commission").

The water companies presented overwhelming evidence that the waters involved have been over–appropriated and that there is not a sufficient supply of water, even in the best of years, to service owners under the decree. As an example, there was testimony that there are thirty rights in an order of priority under the Norviel Decree and that there have been few years when it was possible to serve anyone beyond the tenth or fifteenth right. The evidence was overwhelming that there is no unappropriated water on the Upper Little Colorado watershed. Testimony indicated that owners of water rights were irrigating considerably less acreage than their rights entitled them to, and there have been no instances of abandonment.

The water companies also presented evidence that notwithstanding these conditions, the respondent water agency continues to entertain and award water rights to new applicants, requiring the water companies repeatedly to appear, object, and litigate in order to protect their own rights to the waters, often at considerable expense. It was pointed out that in many instances new applicants who were granted certificates for water rights were under the misapprehension that there was water to use, requiring petitioners to bring court proceedings to prevent it. It was shown that there was no plain, speedy, or adequate remedy at law.

The Water Commission argues that in light of its statutory authority over waters of the state, it has jurisdiction to consider applications to appropriate water in the Upper Little Colorado watershed. A.R.S. § 45–102(A), when this action was filed, stated:

A. The [Arizona water commission] shall have general control and supervision of the waters of the state and of the appropriation and distribution thereof, except distribution of water reserved to special officers appointed by courts under existing judgments or decrees.

A.R.S. § 45–143 stated:

A. The [commission] shall approve applications made in proper form for the appropriation of water for a beneficial use, but when the application or the proposed use conflicts with vested rights, is a menace to public safety, or is against the interests and welfare of the public, the application shall be rejected.

B. An application may be approved for less water than applied for if substantial reasons exist but shall not be approved for more water than may be put to a beneficial use. Applications for municipal uses may be approved to the exclusion of all subsequent appropriations if the estimated needs of the municipality so demand after consideration by and upon order of the commission.

A.R.S. § 45–231(B) stated:[1]

B. When rights to the use of water or dates of appropriation have been determined in a judgment or decree of a court, the department shall accept the determination of such rights and dates of appropriation as found in the judgment or decree, and the owner of an appropriation adjudicated therein need not appear in or take notice of the proceedings, investigations or hearings of the department except to disprove abandonment or other loss of the right adjudicated by the judgment or decree.

The Water Commission contends that in accordance with this statutory scheme, the court has erroneously prohibited it from exercising its legislatively assigned function. The heart of its position is that if all of the waters have been appropriated by virtue of a prior court decree, this may compel the Water Commission to deny a new application but it cannot prohibit the Commission from entertaining it. Speaking directly to the remedy of special action in this case, the Water Commission argues that the relief is in the nature of a writ of prohibition which is properly invoked only where the tribunal against which it is brought is threatening to act beyond its jurisdiction. *See Rothweiler v. Superior Court of Pima County*, 100 Ariz. 37, 410 P.2d 479 (1966); *Jacobson v. Superior Court*, 1 Ariz.App. 342, 402 P.2d 1018 (1965). Its position is that it is acting within, not without, its jurisdiction.

Reading together the water law statutes referred to earlier, it is apparent that the legislature intended that the Water Commission establish appropriative rights to surface waters only to the extent that those rights have not been adjudicated by court decree. A.R.S. § 45–102(A) provides that the Water Commission shall have "general" control and supervision of the appropriation of waters of the state. A.R.S. § 45–143(A) requires the Commission to reject an application for appropriation when the proposed use "conflicts with vested rights." A.R.S. § 45–171 states that nothing in the statutes shall "impair vested rights to the use of water." A.R.S. § 45–231(B) is particularly significant in that it required the Commission to "accept the determination" of rights to the use of water as determined by "judgment or decree of a court." It further provides that owners of these rights "need not appear in or take notice" of proceedings before the Commission which have been established in court.

After a hearing, the trial court in the present case decided that the waters of the Upper Little Colorado have been fully appropriated by reason of the Norviel Decree. It found no evidence that there was any additional water available for appropriation and use even under rare flooding conditions. Under these circumstances, the court found that the issuance of new water certificates by the Commission gives the holders of the certificates the belief that they have unfettered rights to use the water, even though the Water Commission acknowledges that the rights are inferior to those vested under the Norviel Decree. The court found that this situation requires successive injunctive actions by the water companies against the holders of the certificates to protect their decreed rights, amounting to irreparable injury and justifying the grant of prohibition against the Water Commission. Our review of the record shows that the evidence supports these findings.

---

1. Substantial changes in statutory water law were made by the legislature in 1979. A.R.S. § 45–102(A) and A.R.S. § 45–143 remained intact except for a change in reference to the water commission instead of the land department. A.R.S. § 45–231, however, was repealed. Some of the language of paragraph (B) has been incorporated into new section A.R.S. § 45–257(B).

In our opinion, the trial court properly granted relief, although we modify the decree in a minor respect, hereafter explained.

Arizona Rule of Procedure for Special Actions 3 provides for relief where "the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority . . . ." This is, of course, the relief associated with a writ of prohibition before the rule relating to special åctions became effective. *See* State Bar Committee Note, rule 3. By reason of the statutes earlier discussed, the court is empowered to determine the nature and extent of rights in the waters of the Upper Little Colorado River which are then binding upon the Water Commission. Implied in this is the power to determine that there is no water to which additional rights may be asserted. The court has done so here by hearing evidence as to the available water and relating that finding to existing rights previously adjudicated by the Norviel Decree. This determination is likewise binding upon the Commission. Since it is, the Commission may not derogate that determination by granting further rights of appropriation, because to do so would be beyond its legal authority. Special action relief was therefore correctly exercised by the trial court in favor of the water companies. There is no contention that a remedy by appeal would have been plain, speedy, or adequate.

The judgment of the trial court orders that the Water Commission is prohibited from "accepting, processing, entertaining, proceeding with, holding hearings upon, or granting applications to appropriate surface waters within [the waters of the Upper Little Colorado River]." The Commission argues that the fact that the waters have been fully appropriated by reason of prior decree may compel the Commission to deny the application, but that fact should not prohibit it from entertaining the application "as required by the statutes." We do not agree that relief in this special action need necessarily be so limited. No purpose can be served by allowing time–consuming and costly processing of applications which cannot be granted.[2]

We observe that while the judgment in this case operates as a bar to further applications before the Water Commission, there is, of course, no bar to future court proceedings to lift the prohibition where the facts might justify such action.

Finally, we address the issue of abandonment of vested water rights, since the judgment provides "[the Water Commission] cannot decree an abandonment of rights vested by a court decree." After review of the applicable statutes, we hold the law was otherwise when this action was filed. A.R.S. § 45–101(C) provided:

When the owner of a right to the use of water ceases or fails to use the water appropriated for five successive years, the right to the use shall cease, and the water shall revert to the public and shall again be subject to appropriation.

A.R.S. § 45–231(B), quoted earlier, contemplated that the land department could decide a question of abandonment when it was raised. A.R.S. § 45–190 set forth procedures to establish an abandonment. For this reason, the judgment of the trial court is modified by striking the portion relating to abandonment previously referred to.

Judgment affirmed as modified.

WREN and DONOFRIO, JJ., concur.

---

2. Included in the 1979 statutory changes to the water laws are new sections A.R.S. § 45–251 through A.R.S. § 45–260 which are titled "General adjudication of water rights." These sections obviously add a new dimension to the adjudication of water rights in Arizona. However, these provisions are not involved in this case and nothing in this opinion should be construed as a construction or interpretation of their meaning or effect.